UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MONTE MOORE,<br><br>Defendant. | Criminal No. 4:12cr104-01 |

### ORDER

Before the Court is a Motion for Compassionate Release by Defendant Mr. Monte Moore. Mot. for Release, ECF No. 160. For the following reasons, the Motion for Compassionate Release (ECF No. 160) is **GRANTED**. Mr. Moore's *pro se* Letter Motion (ECF No. 155) is **DISMISSED as moot**.

## I.   BACKGROUND

Mr. Moore was indicted on one count of Conspiracy to Possess with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. § 846 (Count One), and three counts of Distribute Cocaine Base, in violation of 21 U.S.C. §841(a)(1) (Counts Two, Three, and Four). Superseding Indictment, ECF No. 2. On July 18, 2013, a jury found Mr. Moore guilty on Counts One, Three, and Four. Jury Verdict, ECF No. 74. On October 11, 2013, the Court sentenced Mr. Moore to 262 months' imprisonment on each count, to be served concurrently.[1] Judgment, ECF No. 94.

---

[1] Prior to the imposition of this sentence, on July 31, 2013, Mr. Moore was brought before another district judge of this Court for a hearing on violations of the terms of supervision in two other cases. *United States v. Moore*, 4:95cr39; *United States v.*

1

Mr. Moore moved under 18 U.S.C. § 3582(c) for compassionate release due to the COVID-19 pandemic. Letter Mot., ECF No. 155. The Court appointed counsel to represent Mr. Moore, and counsel filed a revised Motion for Compassionate Release, asserting that Mr. Moore should be granted a reduction in sentence because his age and health place him at serious risk of severe illness if he contracts COVID-19. Mot. for Release at 2–8, ECF No. 160.

The Court ordered the Government and the United States Probation Office to advise the Court of their positions on Mr. Moore's revised Motion. Both oppose the Motion. Recommendation, ECF No. 162; Resp. in Opp'n, ECF No. 164. The revised Motion is fully briefed and ripe for a decision.

## II. LEGAL STANDARDS

Title 18 U.S.C. § 3582(c)(1)(A) provides that a court may reduce a term of imprisonment after it has been imposed "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by

---

*Moore*, 4:03cr29. The Court revoked supervision in both cases and imposed sentences of 37 months in one case and 23 months in the other. *Moore*, 4:03cr29, Supervised Release Violation Order, ECF No. 29; *Moore*, 4:95cr39, Supervised Release Violation Order, ECF No. 691. Mr. Moore has not moved for a reduction of those sentences. Defendant has not clarified whether the time he has served thus far has been counted towards his revocation sentences, the sentence imposed in the instant case, or some combination of the two. The Government also failed to clarify the sequencing of Mr. Moore's multiple sentences. Calculating Mr. Moore's release date based on the resolution of this Motion is left to the Bureau of Prisons ("BOP"). The Court is confident that the BOP will make the proper determination, subject to the review by counsel for the Government and for Defendant.

the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

Although the United States Court of Appeals for the Fourth Circuit has yet to fully evaluate the impact of these preconditions, other federal Courts of Appeals have ruled that satisfying one of them is a mandatory claim-processing rule. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (ruling that although the "exhaustion requirement does not implicate [a court's] subject-matter jurisdiction," the statute provides that a prisoner may bring a motion on his own behalf only if he fully exhausts administrative rights to appeal with the prison or "wait[s] 30 days after his first request to the prison"); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (finding the petitioner's failure "to comply with § 3582(c)(1)(A)'s exhaustion requirement" to be a "roadblock foreclosing compassionate release at this point").

"When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Alam*, 960 F.3d at 834 (quoting *Hamer v. Neighborhoods Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 (2017)). "Because 'Congress sets the rules' when it comes to statutory exhaustion requirements, the judiciary has a role to play in exception-crafting 'only if Congress wants [it] to.' Nothing in § 3582(c)(1)(A) suggests the possibility of judge-made exceptions." *Id.* at *3 (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016)). Therefore, the 30-day waiting period is mandatory unless the Government waives or forfeits the requirement. *Id.* ("[M]andatory claim-processing rules bind the courts only when properly asserted and not forfeited.").

3

If a motion satisfies the statutory preconditions, a court may reduce the sentence if the Court finds that "extraordinary and compelling reasons warrant such a reduction" and concludes "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Fourth Circuit has ruled recently that there are no applicable policy statements for the Court to consider in defining extraordinary and compelling reasons; it is within the Court's discretion to assess whether extraordinary and compelling reasons exist. *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020).

Courts must also consider the sentencing factors under 18 U.S.C. § 3553(a) before granting a motion for compassionate release. A "court may deny a motion for compassionate release if the § 3553(a) factors override what would otherwise be extraordinary and compelling circumstances" meriting compassionate release. *Easter v. United States*, No. 4:16-cr-49(7), 2020 WL 3315993, at *4 (E.D. Va. June 18, 2020) (citing *United States v. Doumas*, No. 13-cr-120 (JMA), 2020 WL 3256734, at *2 (E.D.N.Y. June 16, 2020)).

## III. APPLICATION

### A. Statutory Precondition

Mr. Moore has satisfied the thirty-day waiting period. He filed a request with the warden of his facility on October 8, 2020. Ex. 3, ECF No. 160-3. More than thirty days have passed. Accordingly, the precondition is met and the Court proceeds with evaluating the merits of Mr. Moore's request.

B.     Extraordinary and Compelling Reasons

"[W]hile the COVID-19 pandemic is undoubtedly serious and of great concern, numerous courts have found that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease." *United States v. Nwankwo*, No. 12-CR-31(VM), 2020 WL 2490044, at *1 (S.D.N.Y. May 14, 2020). The "compassionate release motions amid the COVID-19 pandemic have required a 'fact-intensive' inquiry, made in the 'unique circumstances' and 'context' of each individual defendant. . . . [C]ourts . . . have considered the age of the prisoner; the severity and documented history of the defendant's health conditions, as well as the defendant's history of managing those conditions in prison; the proliferation and status of infections in the prison facility; [and] the proportion of the term of incarceration that has been served by the prisoner . . . ." *United States v. Brady*, No. 18-CR-316, 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (citations omitted). Considering these factors, the Court finds that Mr. Moore has presented "extraordinary and compelling" reasons for a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i).

Mr. Moore's age weighs slightly in favor of finding that there are extraordinary and compelling reasons for a reduction in sentence. He is almost 45 years old. PSR at 2, ECF No. 157. He is near an age category that is at an increased risk from COVID-19. *See* Centers for Disease Control and Prevention ("CDC"), Weekly Updates by Selected Demographic and Geographic Characteristics, https://www.cdc.go-

v/nchs/nvss/vsrr/covid_weekly/index.htm (last visited March 2, 2021) (noting the jump in risk to begin around forty-five to fifty-four age category).

"[T]he proliferation and status of infections in the prison facility" in which Mr. Moore is incarcerated weigh in favor of finding that his circumstances are "extraordinary and compelling." *Brady*, 2020 WL 2512100, at *3. Mr. Moore is serving his sentence at Petersburg Low FCI. BOP, Inmate Locator, No. 26896-083, https://www.bop.gov/inmateloc/ (last visited March 8, 2021). There are three positive cases currently, and there was a severe outbreak previously (335 positive cases). BOP, Coronavirus, Full Breakdown and Additional Details, https://www.bop.gov/coronavirus/ (updated daily at 3:00 P.M.) (last visited March 8 2021). Although this is not unusual at this stage in this pandemic, it indicates that the facility struggles to prevent the spread of the virus among its population.

Mr. Moore's health weighs in favor of finding that his circumstances are extraordinary and compelling.[2] The CDC has released a list of conditions known to increase a person's risk of severe illness from COVID-19. CDC, People Who Are at Increased Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last updated Jan. 4, 2021). According to the CDC, those with high blood pressure *might* be at increased risk. *Id.* Being obese definitively places a person at increased risk. *Id.* Mr. Moore has high blood pressure. Sealed

---

[2] The Government's assertion that Mr. Moore will have better access to medical care if he remains in prison is rejected. The fact that society may fail to provide vulnerable individuals with affordable medical care is weak—and cruel—justification for keeping an individual incarcerated under dangerous conditions that increase the likelihood that he will serious need medical care.

Medical Records, ECF No. 161. At the last time he was weighed by BOP medical staff, Mr. Moore weighed 252 pounds. *Id.* at 36. He is classified as obese by CDC standards. CDC, Adult BMI Calculator, *available at* https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html.

Mr. Moore also has high cholesterol and a history of cardiac dysrhythmia. Sealed Medical Records, ECF No. 161. Although neither of these conditions is noted by the CDC as increasing a person's risk, recent studies have shown that these conditions may increase a person's risk of serious illness from COVID-19.[3] Am. Heart. Assoc. *COVID-19 risks: Irregular heartbeat may increase risk, blood pressure medicines do not* (Nov. 9, 2020), *available at* https://newsroom.heart.org/news/covid-19-risks-irregular-heartbeat-may-increase-risk-blood-pressure-medicines-do-not; Aung, N., *et al.*, *Causal Inference for Genetic Obesity, Cardiometabolic Profile and COVID-19 Susceptibility: A Mendelian Randomization Study*, 11 Frontiers in Genetics (July 23, 2020), *available at* https://www.frontiersin.org/articles/10.3389/fgene.2020.586308/full.

As noted above, counsel have left unresolved determining the proportion of the sentence that has been served by Mr. Moore. As reviewed, several months before the sentence was imposed in the instant case, Mr. Moore's supervision was revoked in two other cases and additional 23-month and 37-month sentences were imposed as a

---

[3] The CDC notes that its list of conditions "is not exhaustive" and "may not include every condition that might increase one's risk for developing severe illness from COVID-19 . . . ." CDC, People Who Are at Increased Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last updated Jan. 4, 2021).

result. Mr. Moore has been in custody since January 8, 2013. PSR at 1, ECF No. 157. He has served 98 months. It is unclear whether these months were credited towards his 262-month sentence in this case, or whether they were first credited towards his revocation sentences.[4] Regardless of this determination, Mr. Moore has served a significant 98-month sentence. This significance of this sentence is underscored by the fact that Mr. Moore's sentence would likely have been 111 months lower than the sentence imposed if he were sentenced under today's Guidelines.[5]

 The Court weighs these factors together. Mr. Moore is approaching an age category that is at heightened risk of serious complications from COVID-19. He has several underlying medical conditions that increase his risk of serious illness, and his facility has a history of failing to control the spread of COVID-19 among its population. Mr. Moore has served a substantial sentence, especially after taking into consideration the fact that he would have been sentenced to a lower sentence under today's Guidelines. The Court finds that Mr. Moore has presented extraordinary and compelling reasons for a reduction in sentence.

---

[4] If the latter is true, then Mr. Moore has served 47 months of his 262-month sentence (assuming that he received good time credit on his revocation sentences).

[5] Mr. Moore was designated a career offender. But the Fourth Circuit has held that one of Mr. Moore's prior controlled substance convictions is not a qualifying offense under USSG § 4B1.2. *See United States v. Norman*, 935 F.3d 232, 239 (4th Cir. 2019). Had Mr. Moore not been designated a career offender, he would have been sentenced with an Offense Level of 33 and a Criminal History Category of IV to a low-end Guidelines sentence of 188 months' imprisonment. PSR at 28, ECF No. 157. Additional amendments to the Guidelines' drug quantity table would have reduced Mr. Moore's offense level to 31, instead of 34, resulting in an even lower low-end sentence of 151 months.

C.     Section 3553(a) Factors

The Court has considered the Section 3553(a) factors and concludes that a reduction in sentence is consistent with these sentencing goals. Under Section 3553(a) courts must consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range
>     . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Considering these factors as detailed below, Mr. Moore is a suitable candidate for a sentence reduction.

The offense for which Mr. Moore is currently incarcerated is serious. *See* 18 U.S.C. § 3553(a)(1). He was engaged in a drug conspiracy. PSR at 5–6, ECF No. 157. He was attributed with a significant quantity of drugs. *Id.* at 6. But Mr. Moore has served a considerable sentence—more than eight years—and the Court finds that service of this sentence adequately reflects the seriousness of the offense, particularly in light of the findings addressed above regarding the Guideline range that is

9

applicable today. The Court also finds that the sentence served has provided sufficient specific deterrence and punishment.

Defendant has spent most of his life imprisoned, in part because he served a significant federal sentence under pre-*Booker* mandatory Guidelines at a time when the harmful and discriminatory crack-powder disparity was resulting in brutally harsh sentences for individuals like Mr. Moore. PSR at 10, ECF No. 157 (showing that Mr. Moore spent 156 months incarcerated beginning at age 18 for his involvement in a drug conspiracy). Mr. Moore also had a difficult and impoverished childhood. PSR at 14–15, 34–36, ECF No. 157. He was exposed to drug and alcohol abuse and violent crime at a young age. *Id.* The Court finds this history to be a mitigating factor.

Mr. Moore has dedicated himself to self-improvement and religious studies these past eight years. Letter at 1, ECF NO. 160-4. He has completed numerous programs at the BOP. *Id.* He has written and published two books. *Id.* He wants to be a positive influence in the community. *Id.*

Mr. Moore has a viable release plan. He will reside with his mother. Mot. for Release at 21, ECF No. 160. He has two honorable and lawful jobs waiting for him when he is released. Ex. 5, ECF No. 160-5 (letter from the owner of a lawn care company offering Mr. Moore full time employment upon release at $13 per hour); Ex. 6, ECF No. 160-6 (letter from the owner of a company offering Mr. Moore full time employment as a quality inspector at $12 per hour). He has connected with Real People

Educating Others, a non-profit organization working to assist citizens returning to society. Ex. 7, ECF No. 160-7.

Weighing all of these factors together, Mr. Moore is a candidate for a reduction in sentence. The Court finds that the goals of deterrence and rehabilitation have been served. Mr. Moore has been adequately punished with a period of imprisonment reflecting the seriousness of the offense.

### IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release (ECF No. 160) is **GRANTED**. His *pro se* Motion (ECF No. 155) is **DISMISSED as moot**. The sentence imposed following the convictions in Crim. No. 4:12cr104-02 is **REDUCED** to **TIME SERVED**. The BOP shall have up to ten days to process this Order and may, in its discretion, require Mr. Moore to undergo a 14-day quarantine. The scope of this ruling does not reach the sentences imposed by another judge in 4:03cr29 and 4:95cr39.

The previously imposed twelve-year period of supervision shall commence upon release. All standard and special conditions of supervised release described in the Judgment (ECF No. 94) remain in effect; Mr. Moore is **ORDERED** to abide by all of these conditions. It is further **ORDERED** that (1) Mr. Moore reside with his mother; (2) that he serve 36 months' home detention; and (3) within 72 hours of release, he shall contact the United States Probation Office for specific reporting instructions. Upon release, Mr. Moore is **ORDERED** to self-isolate to the greatest extent possible for fourteen days.

The cost of electronic monitoring shall be at Mr. Moore's expense. During the period of home confinement, Mr. Moore shall remain at his place of residence except for employment, medical appointments, and other activities approved in advance by the United States Probation Office. While on home detention, Mr. Moore shall maintain a telephone at his residence without party lines, telephone answering machines, a modem, call forwarding, caller ID, call waiting, portable cordless telephones or any other devices or services that may interfere with the proper functioning of the electronic monitoring equipment for the duration of the above period. Mr. Moore shall wear an electronic monitoring device, comply with electronic monitoring procedures, and pay the costs of electronic monitoring, all as directed by the Probation Office.

The Clerk is **REQUESTED** to forward a copy of this Order to Defendant, his appointed counsel and to the Assistant United States Attorney.

**IT IS SO ORDERED.**

/s/
Arenda L. Wright Allen
United States District Judge

March 8, 2021
Norfolk, Virginia